Case 14-1827, Ali El Hallani, et al. v. Huntington National Bank. Oral argument, 15 minutes per side. Mr. Ayad, for the appellant. Good morning, judges. Five minutes on rebuttal, please. Given the MLK date that's passed a few days ago, this is a great time to argue civil rights before your honors, and I appreciate having the opportunity, as the civil rights for Arab Americans are indeed these times, these trying times for Arab Americans. I'll get into the matter. Again, the issue here on this appeal is whether the minimum pleading standard was met. Unfortunately, the district court judge required us to literally prove our case before any discovery was taken. In essence, he dived into matters that he were not formed to dive into, and in all fairness, he allowed himself to not take what was stated on the pleadings as true as he was supposed to. Remind me, in the complaint, there's 25 plaintiffs? There are 25. What time period were their accounts closed over? I mean, how broad of a time period? I would say approximately, and I'm not absolutely sure your honor as to the exact, but I would say approximately within a year and a half to two years, approximate time. And they were all business owners? Business owners and individuals as well, because normally when they close the business, they also close the family accounts as well. So how many separate entities, how many separate either families or businesses that were associated with each other? There was over hundreds of accounts. As to the named individuals that we have signed on, we're 25 individuals, and that number has increased over the period as we get more calls with the American Civil Rights Hotline that comes in every other week. Was there any record evidence as to what justification was given? Were there any exhibits or anything indicating that the accounts were being closed for overdrafts or some other reason? Absolutely not, your honor, and that's one of the significant problems we're having. In fact, when we signed up these individuals, we asked them interrogatory-type questions as to whether you wired money, what's your criminal record, do you have any problems, was this a loan, things of that nature indicated. Did you make allegations about that in the complaint? What we did is they didn't give them any reason or basis that they have any illegal activity or any issues with the bank. That's those allegations. Did you make any allegations in the complaint that the plaintiffs had themselves no criminal convictions or the plaintiffs had not overdrawn their accounts or things of that type? We did make the general allegation, your honor, as to for any misconduct or any illegal activity. We did make that allegation in the complaint on all of these plaintiffs. Okay, and then you in part also rely upon this affidavit. Were the plaintiffs all from the same branch that this former Huntington employee was at? No, they were not. Again, we believe strongly, again, according to the affidavit by this individual, an employee of... Former employee. Former employee, yes, but at the time he spent almost a year at the time when they were on a quarterly basis sending him all these accounts to close. They all happened to be Arab or Middle Eastern descent. Did he give any indication, though, of maybe at his branch, Arab or Middle Eastern nationalities made up the broad majority of the accounts? He did indicate, your honor, as to that he had other similarly situated non-Middle Eastern accounts that were not treated in the same way. They were not closed. They were not asked to be closed. And this is why it was hard for us to basically swallow the fact that the federal judge would dismiss this case when we had an affidavit from an employee. We had 25 plaintiffs. We had a hotline based on people calling all based on Middle Eastern. And yet, even though they're not supposed to, they don't have to on the pleading stage, we were not given one iota of reasons why they would close this individual's bank accounts. I think there's a little bit of a... You say that the class is more numerous, and you say you've identified 25 class members, and yet the complaint itself only refers to these two individuals, and yet the... I mean, assuming it's appropriate to consider the affidavits on this motion to dismiss, which is an analytical step you've got to get through before you start considering them, but assuming it is, the information in the affidavits is, for the most part, pretty vague and pretty broad and doesn't relate. I mean, it might lead one to believe that you've alleged that it's somewhat likely that Huntington is discriminating against Arab Americans as a group, but it's thin on connections to these two plaintiffs except for one of the plaintiffs' own affidavits. And I guess the question, to some degree, ultimately, is whether these generalized allegations in this context are sufficient to get you past a motion to dismiss given that it's not really set up, the complaint's not really set up to allege the specific harm to these individuals and the specific facts that would support their claims of discrimination. Yes, Your Honor. I mean, the reason why there was two individuals, not the rest of them, in civil rights cases, it's hard for individuals to put their name out there because of the stigma. We do have them signed up, they are part of this class, but a lot of them did not want to actually put their name on the complaint in a federal action that was close to public, it was a high-profile case, and they're afraid of the stigma that they may not be allowed to go out and get additional loans or things of that nature with that stigma there as to the banking institutions. Whether that has any... We have a pleading standard now that's a little more stringent than the pleading standard used to be, and it, unfortunately, doesn't take into account why people might not want to come forward. Absolutely correct, Your Honor. I'm just explaining why we only had two of them come up in the forward vote, but yet we have 25. Now, going back to your question, Your Honor, all of these individuals, now the harm particular to them really goes as to the weight of the evidence. If the court was to take it as true that, one, they were Middle Eastern Americans, two, it was done by Huntington National Bank, three, they weren't given a reason for it over a number of them, and an employee basically saying that this is what's transpiring, a civil rights organization that's saying, basically, these are the calls that we are getting, and then later even a survey saying that they're only closed non-Arab or Middle Eastern, non-white bank accounts is enough, Your Honor, because the distinguishment, that's why we formed it as a class action, a distinguishing for each and every plaintiff is different. One has, for instance, there's one that has 10 charter schools, for instance. There's another individual that has 10 party stores. There's another individual. Each particular damage is distinct to himself. For instance, if they close their bank account for a party store owner, he no longer can operate, for instance, his lottery machine. He can no longer cash checks. He can no longer. Then he has to go through the renewal process of operating and puts his business on hold forever. None of this was known by the district court when it dismissed. Am I correct? They never allowed us to argue, Your Honor. That's the point, that you had to give the district court enough to believe that the complaint sets up a viable cause of action. Your Honor, this, I think, goes to really have to. We take off what the court knew to individuals whose accounts were closed with no reason. Actually, 25 individuals, Your Honor. It had the 25, but it didn't have any support for that. Well, it was a complaint. Affidavit is enough. There was a complaint. There was also an affidavit from the field director of the American Civil Rights League. The affidavit doesn't say anything about the 25. It's just much more generalized than that. I mean, he's talking about phone calls they received and whether those phone calls had anything to do with the individuals. In this case, I'm not sure we know. The affidavit of the employee, though, Your Honor, does say we had, and I believe it said 40 accounts every quarter or so that they would come through and close Middle Eastern and nonwhite bank accounts. Again, we made a certain statement to the court that we have those. I think the court should take it as true, unless there's other reasons not to adopt that, Your Honor. Again, we were held to a much higher standard in trying to prove our case on the pleading stage. The court was supposed to basically take these as true and allow the discovery stage to move forward on it. Unfortunately, we weren't given this opportunity. I could just say this, Your Honor. This is a very serious problem in the community. Just because we had these individuals, there are, I believe, thousands of individuals out there. They just are afraid to come forward because we hear this over and over and over again. Whether you go to a diner, whether you go to a restaurant, whether you go to a lounge, you hear, my account's been closed, closed. Arab American community, 95% of them are in business. When you can't bank, basically your livelihood is at stake. I know this is outside of the realms, Your Honors, but this is a very serious issue. The judge with 25 individuals, the cases that they cite, besides the fact that a couple of district court cases, dealt with one plaintiff. They didn't put additional facts, such as affidavits, multiple individuals, hotlines, surveys. None of them basically substantiated these individual plaintiffs' dismissal on their claims. Even though Brother Counsel wants us to believe that this is just a, I've been harmed type of discriminatory case, that is far from it. I can't imagine what the court wanted us to do. Basically, have a letter sent by Hunter National Bank, your bank account is being closed because you're an Arab American. I think we understand your argument, and I think your time is up. Thank you, Judge, I'm sorry. You'll have your rebuttal time. Yes. Okay. Good morning, Your Honors. David Plunkett on behalf of the appellee, Huntington National Bank. May it please the court. Your Honors, our position here is simple. What's been alleged here in the amended complaint, as the district court noted, is that these two individuals and maybe some unnamed 25 others had accounts at Huntington Bank. Should the district court have looked at it as 25 or 26? I believe that it should look at it just as the two. Why do you say that? Well, first of all, because the two are the only ones that there were any facts alleged about, and the rest of these people were never named. But even if, let's say for the sake of argument, even if the district court I want to say based on the pleadings, right? Right. So the pleadings said enough, do you agree, said enough to include 25? I don't believe they did, Judge. Why not? Because just saying, and there are 25 others that are also similarly situated, without giving a single fact about any of those other 25 is not enough. Didn't they allege, though, that they had their accounts revoked without reason, without cause? They did, Judge. So you may win summary judgment, but at that stage, don't we have to accept that as true? My answer to that, Judge, is even if you do, let's say we accept that as true, that they alleged enough to have all 25 as part of this. There's still not a single allegation in this complaint that would satisfy the similarly situated requirement. All they have said, even if . . . And I think they may have trouble getting to a class action, but that's not where you are at the time of the 12B-6. I mean, if they have 25, they probably don't have numerosity. But that's not what a 12B-6 is supposed to deal with. Well, I agree, Judge, but under the, you know, obviously . . . In terms of similarly situated, the real question is, could an inference be drawn that you're discriminating based upon race? And my response is . . . Why would a bank close a business account without explanation? Well, Judge, as Judge Rosen stated in his opinion, requiring us to come forward with an explanation when they have . . . But what about this take on the case? Forget all the people who aren't mentioned, all right? I mean, at this point, I mean, Judge Gwynne's quite right. Class issues are for down the road. Right now we're just trying to determine, really, if this goes forward as an individual complaint. Why can't you take the information about the two individuals that is pled and couple that with the information about the phone calls to the organization and couple that with the affidavit from the former employee and say that the pleadings are sufficient to raise a possible inference of discrimination in this particular case in view of the individual facts concerning the name plaintiffs, i.e. no reason given for the closure, lack of a criminal record, lack of any illegal activity in the accounts, lack of any transfer of money overseas, plus some evidence that Huntington may well have been closing accounts based on race or national origin. Why isn't that enough? Just forget all the extraneous focus on the individual. Understood. Here's why it's not enough, and it's because what Your Honor started out with is why taking the allegations in the complaint, adding the affidavit from the former employee, adding the affidavit from the woman who worked at the civil rights organization, here's why that's not enough. The former employee hadn't worked for Huntington for four years. It was at a different branch. There was nothing suggesting that he had any knowledge about these people or what happened to them, the two or the other 25, whoever they are. The woman who testified through her affidavit about the hotline calls that were received, this was a press conference put on by an Arab American civil rights organization, put forward into the Arab American community to say, if you've been damaged by this, please call. Well, of course it's going to be all or mostly Arab Americans, and how does she even know? First of all, she's just on the phone with people. So it's so lacking in any suggestion of creating any kind of plausible inference here, Judge. Let's go back to the former employee. The idea that the person doesn't work there anymore does not strike me as a reason to discount the testimony that we don't take it as true. The fact that you don't work there at the same branch they're talking about four years ago. Right. But let's look at what his affidavit really says, Sean. What his affidavit says is, I used to work at this branch, which is if the court could probably take judicial notice, that the Oakman branch in Dearborn is heavily patronage by Arab Americans. So all he says is, I used to work at this branch. Lists would come in quarterly. Included on those lists are names of people who are Arab American or Chaldean, to close lists, and there were other people whose accounts weren't closed. That's all it says, to take that and suggest that that is evidence of some widespread or particular. It may not be evidence of widespread, or it may not support going forward after summary judgment, but at the pleading stage it's some evidence. I mean, your arguments seem to go more to weight. Let me take you, because I'm looking at the amended complaint, and you talk about El Halani's account, without providing any reason for doing so. He made, apparently, an inquiry to Huntington. Why did you close my account? He alleges that, and why wouldn't Huntington give him an answer? Well, Judge, I guess my answer to that is the same as it was before, in a sense. I don't mean it. We don't have an obligation. It's not before the court, but our customer agreements say we can close, like my bank account probably says, we can close it for any reason or no reason. I mean, it's plausibility when you look at the allegations, and it seems to me that most individuals, if a bank account were closed, would receive some sort of explanation when they went to the bank. It just seems implausible that the bank would not give an explanation in the presence of a legitimate explanation. I mean, so it's a plausibility judgment. It's a very legitimate comment. I don't disagree with that statement about that you would think that they would. However, here, I just think that's unfair to throw that as a legal requirement on the bank. You don't have to say that it's a legal requirement. All you have to say is that the failure to provide an explanation could tend to lead to give some support to the presence of an illegitimate explanation. You don't have to say the bank was required to. That doesn't even really relevant in this context. The relevance is whether there's some plausibility to the allegation that you didn't give an explanation. And whether it lends plausibility, that's the point. You say we don't have to say it. That's true. You have to stand here, though, and respond to this not, you know. That's true, Judge. I mean, you'd think you'd say, well, you've had, you know, however many bounced checks over a period of time. Or, you know, concerns about something or other, concerns about, you know, whatever it is. Isn't the plausibility against the backdrop? So maybe the circumstances in Detroit are different, but the circumstances in Ohio are that banks are falling all over themselves to fight for business customers. As is Huntington. And we have, I mean, again, it's not in the record. We have outreach programs there in the American community. We're not, you know, Huntington Bank is certainly not closing its doors to the American community. We welcome all of that business. So on a plausibility basis, isn't there, I mean, an allegation that someone's got no criminal activity, had been, you know, a customer for some period of time for a business account, isn't that enough to at least get to discovery? Judge, I obviously don't think it is, but that's up to your honors to decide. I think that Judge Rosen's opinion is detailed. I think he gave them every opportunity to come forward with more evidence. They filed their complaint. We filed a motion to dismiss. I was a little bit surprised at that. Why would you ever ask for evidence on a 12b-6? Why would we ever ask for? Why would you ever ask? I mean, you could ask, you could suggest you need to amend the complaint, but why? I'm sorry. Why would Judge Rosen ask for evidence, I think? If I said it that way, that wasn't my impression. I think Judge Rosen was trying to give them a roadmap of how to make allegations sufficient to satisfy the standards. If I said bring forward evidence, I didn't mean it like that. And in my view, they failed to do that, including with, we haven't talked about this survey, but I think it's facially deficient. They put forward a survey of four people at different branches, none of whom had accounts open during the same time period, or maybe one of them did. It's unclear because they just wrote N-A. There was no box to check for Arab or Middle Eastern. There's just a box to check for white, which is classified under the Census Bureau as including Middle Eastern, Lebanese, and Arab. And so I just think that has absolutely no bearing on whether this complaint should survive. Unless the Court has any other questions, we ask that you affirm the dismissal by the District Court. Thank you. Give your rebuttal, Mr. Hayden. Yes, Your Honor. Your Honor, with all due respect to Judge Rosen, I think Judge Rosen was just attempting to find ways to kick it. We strongly believe the first decision by the judge was wrong. We feel that we didn't need a survey. Why is that? Because we had a bank manager, an employee, that said there were similarly situated non-Middle Eastern individuals that they were not closing their bank accounts. Again, taken as true on its face, that should have been enough. And if you look at the nitpicking that, again, with all due respect, Judge Rosen was doing, he was looking at two days, the survey done before we got these affidavits two days before the deadline, the timing of when someone worked. Everyone knows that just because the employee worked at different times, it still could be plausible inference of discrimination. We were saying the whole institution is discrimination. We believe, actually we know, that these orders were coming from the headquarters and basically saying shut them down. It wasn't the branch managers. I'm sorry. Should this court look at your case without the so-called survey? Do you still earn reversal? The survey left me pretty cold, okay, but do we need that survey? I don't think absolutely not. The survey didn't help you, I don't think. I don't think we need the survey at all. So in the absence of the survey, you kick off what you have. Again, we have the 25 individuals, we have the employees. Well, you don't have the 25. Let's say you don't have the 25. Let's say you have two. Well, even if we have two, Your Honor, those two with the Arab American hotline, with the banking statement, I thought the banking statement for sure, Judge, for sure would absolutely at least allow us to be pleading a motion. And I was quite surprised by the fact. So, no, I strongly believe we don't even need that additional survey. And, again, you know, going back to the reason, those individuals have been banking with these institutions for 27 years. There are kids' accounts, six- or seven-year-old accounts being closed. What does a father say to a child when he goes home? Why was my account closed? Oh, it's because you're an Arab. I mean, well, you know, these things are so prevalent. Again, it would have been nice. Absolutely, Brother Counsel does not need to give an explanation as to why that. But to just round this up and be any chance for us to move forward, they could have easily come forth and said, Here, let me show you A, B, C, and D white customers that their bank accounts were closed. They didn't do that. They didn't do any of that. I think it goes not that I think it goes to inference that they don't have it. They're not required to come forward. They're not required, Your Honor, no. But, I mean, they would have definitely beat us up on that. Anywhere with that. Okay. Because, I mean, they have a right under the procedures to test the allegations of your complaint without coming forward with anything else. And it goes to my point, Your Honor, then what are they left with? They're left with our pleadings. Our pleadings, we have A, B, C, and D, all these individuals. Then don't try to nitpick at something when it simply is not there. And, in all essence, Your Honor, we've showed, again, these individuals, the hotline, the banking employee affidavit, and, lastly, the survey. I think it's enough to be pleadings. I can't imagine. I've been doing civil rights for 15 years, Your Honor. I can't imagine. With that many individuals, with an affidavit from an employee, how else would you ever be pleadings, in a sense, without someone actually coming and saying, I hate you, this, that, Arab, or what have you. You know, in all essence. Again, the rest of the stuff I was going to speak about is really in the brief, Your Honor. If Your Honor has any questions, please, I'll be happy to answer any further questions. All right. We thank you both for your argument, and we'll consider the case carefully. Thank you, Your Honor.